Number 161520 Dukes Bridge LLC et al. versus Gilbert D. Beinhocker et al. May it please the Court, my name is Sean Farrell and I represent the appellant in this matter. May I reserve two minutes for rebuttal, Your Honor? Okay. Thank you. This case is an appeal concerning contract formation. It is, can one contract without a clear incorporation clause that has been breached be nullified by a second contract that has any exculpatory clause in it? This matter arises out of motion for summary judgment granting the appellant the summary judgment against appellee and a co-defendant. There the Court found at least gross negligence if not fundamental fraud in the breach of the contract. Now the backdrop of this contract was a non-contravention agreement and a loan document. Do we have any indication, I couldn't find it in the record, as to who prepared these contracts? These contracts were prepared and negotiated with both parties having counsel. But that doesn't answer my question as to who did the drafting? The initial drafting was done by counsel for Aqua Blue. Okay. Thank you. The appellant, Your Honor. So these documents consummated a business transaction by which Aqua Blue provided premium financing to pay the premiums of a key man life insurance policy that was retained by the appellee. There in the non-contravention agreement under Article 3, which is relevant to this case before Your Honors, Article 3 said in particular that the individuals, being the appellee and the co-defendant, shall not take any intentional actions to take a loan out on the life insurance policy, thus affecting the premium raised and potentially causing a lapse. They did just that. In fact, the record is pretty clear. There's no issue in this case as to breach, at least none relevant to this appeal. The question here is that you've got an indemnification clause in the non-contravention agreement, which seems to be flatly contradictory to the non-recourse provisions of the loan agreement. Right. In circumstances in which we have said, and more importantly because this is a diversity case, Massachusetts courts have said that when you have a group of documents all referencing the same transaction and all executed at or around the same time, they ought to be construed together. And construed together they should be, but they are separate documents. So the first point that I would make, Judge Celia, is that I understand your point, but they are separate contract documents and they have separate obligations. I know, but I'm the Massachusetts case where we have to look at the documents together. We can't close our eyes to the context. Certainly. And I'm having difficulty reconciling these two provisions or figuring out the basis on which we should determine which agreement gets primacy in this situation. Well, Your Honor, if we were to read the provisions together, even if I were to say I was going to provide all services to build, Your Honor, a house, except for landscaping and hardscaping, right? So there can be two provisions in a single document that have wide breadth scope of obligations and one that limit or take those obligations back with specificity. So even reading them together, Your Honor, all the words, there should be no surplus words in a contract. All the words should be given meaning, and Massachusetts law would find the same, that we should give those words and the specific words used by lawyers the specific meaning that they wanted. And to induce the loan of the premium financing, they were obligated to agree to the specific terms contained in a non-contravention agreement, which under Article III specifically said do not take a loan out of the right to that house. I understand, but what you've got is you've got the loan agreement, this provision, that Judge Woodlock focused on, that says insofar as claims arise in connection with the loan or the loan documents, a defined term which includes by its scope the non-contravention agreement, all right, the borrower or trustee or whatever mine offer is called, will be liable in no circumstances for anything beyond the collateral, the value of the policy. Then you've got this whole harmless agreement that says if he breaches that agreement, he will be liable. And doesn't seem to limit that liability to the policy, although I suppose maybe the answer is you can screw it that way, but they seem to me to be flatly contradictory. Well, Judge Celia, to the extent that they're contradictory, that requires a court to bring in a reasonable business interpretation into the case. Does it, or does it require us to leave it to a fact finder to determine what the intent of the parties is when they adopt flatly contradictory provisions? Well, this in fact is the Jay Sullivan case we studied in our brief, Your Honor, where a general contractor was suing a state college for termination, and the general contractor's contract specifically said you cannot sue this state college except for these specific provisions of the contract. And he brought a quantum merit cause of action. There the court said we're going to interpret with the business reasons as to why those provisions would be in there, and they found specifically that the quantum merit cause of action was sustained, that the intent of the parties was merely to have the signatories of the agreement not sued outside of the specific paragraphs within the contract, but not to limit the category of recovery. That was the Jay Sullivan case. I understand that, but how can you do that here? I mean, I can see my office saying, here's the loan agreement. That's the main document. The main document. It says that in no circumstances will I be personally liable for anything that I do in connection with any of these loan documents, so I don't really care what's in any of the other documents. So to that point, he was represented by counsel at the negotiation of this to sign, and I don't know, ignorance of a contract would be the defense of the obligations contained in that contract. That contract said do not take out a loan and affect the lasting of this policy. Maybe it would help me if you, are you, how can we reconcile the two if the non-contravention agreement is a loan document? Just tell me what is the function, because if it's a loan document, that means at the time they drafted these two things, they went through the trouble of writing out a non-contravention agreement, notwithstanding the non-recourse provision. So what function, practically, would the non-contravention agreement perform if it's a loan document? Thank you, Judge Barron. What it practically does is it limits the exculpatory language from the loan agreement to specific intentional acts that now the appellee can't take. So if the loan is not paid back, that's not a breach. No one could sue. It's still a non-recourse loan. But under the limited specified things that you could not do, there could be personal liability because as a practical matter, as the insured, he could always go back and do exactly what he did, which is take a loan out on the policy because he felt that he needed a little extra cash to support his business. So pure, just simple default, I don't have enough money, I couldn't pay, doesn't trigger the non-contravention agreement? No, it does not. No, it does not. Let me ask you another question as to whether we are, in fact, dealing with a loan document in the instance of the non-contravention agreement. I've got your brief open at page 11, which has definitions. It sets out the defense here is, notwithstanding any other provision of this specialty finance loan agreement or any other loan documents, the lender agrees that in effect there will be no recourse against Beinhacker. Then down below on that same page, you set out a definition of loan document, and that is any one or more of this loan agreement, any other agreement or other instrument, agreement, or document, with or issued or given by the borrower. Now, as I understand it, the borrower in this case is the subtrust. Was the subtrust a party to the non-contravention agreement? Yes. Okay. I didn't understand that. It was a signatory to the non-contravention agreement? Your Honor, I'm not confident of that. I don't know. The fact is if the subtrust was not a party signing the non-contravention agreement, then Section 2.1C of the loan agreement doesn't apply to it. Thank you, Justice Souter. I agree with you. It would not apply, and I'll take that in a minute. Maybe you're conceding that point. I had thought there's the follow-on language which says after the borrower, which Justice Souter was just asking about, it then says, and all waivers, consents, agreements, reports, statements, certificates, schedules, and other documents executed by the requisite persons. Then requisite persons is not defined. Persons is defined as a natural person. I don't know what requisite persons are, but I don't know if that's the two signatories. But I'm also not sure, is that trailing language, and all waivers, consents, agreements, best read to be inclusive of the types of things that can bring something within the loan document, or does it just stop with borrower? As I read your brief, you seem to be stopping with borrower. So in other words, if a signatory is not a borrower, then it can't be a loan document. Correct. Is that your position? Yes, Your Honor. And thank you, Justice Souter and Justice Barron. Just to follow up that point also, the holding by Judge Woodlock really focused on the date that the two were signed. And I think that's insufficient to incorporate them as well. On page 22 of his opinion, he stated that it was the fact that they were both signed simultaneously on the same day. And that doesn't, to me, connote an incorporation of two documents into each other. But what about this other language here? Why isn't that further inclusive language about the kinds of documents that the clause defining loan document means to include? And why wouldn't Beinecker be, is it Beinecker or Beinhofer? I think it's Beinhofer. Beinhofer be a requisite person? He would not be a requisite person in that I think what the intent of that section was, is the loan documents also created the subtrust and created a passing of the life insurance which sat in an initial trust created by Mr. Beinhecker and Mr. Phyllis. It's called the TCPS trust. Passing that asset into the subtrust. So there were certainly documents that had to be filed with the states. There are different, you know, trust statutes that were governing one trust was from Delaware, one trust was from New York, and I think what that was trying to do was trying to identify that there might be other documents to perfect the intent of the parties. And that would be part of the loan documents. No liability. But the predicate language refers to documents concerning the loan, right? Right. But the loan documents themselves also include the concept of other documents that would create a subtrust to protect the collateral. And would you concede that, again, going to the loan document definition, that regardless of whether the subtrust was a party to the non-contravention agreement, the non-contravention agreement was executed by the requisite persons, if we can figure out what that means, in connection with the foregoing, and the foregoing includes the original loan document itself. Would you say that it was executed in connection with the original loan, which has the non-recourse provision? I'm out of time, Judge Barron. Thank you, Justice Souter. I would concede that both documents were certainly executed in connection with each other to induce Aqua Blue to make the lending. So there is necessarily the conflict between the two? There is not necessarily a conflict between the two, because I think that there's nothing. Let's say tension. Let's say tension. I think they could be right consistently, where we're saying that for the loan, non-repayment would not be a reason for us to have a cause of action against you. It's a non-recourse loan, but for these limited exceptions. So you can have a broad language, and often in contract drafting, we have the broad language of all and every, and all this will be provided with the exception of. So you're basically saying the specific governs the general. Basically, your argument is the specific governs the general. Correct, Justice Souter. Am I right that the specific that you're referencing lists all default events as the things that trigger it? Specifically, the non-constitutional agreement does list in Article III the specific events that would trigger default. But aren't they all the default? I mean, what's it lead out? It's one thing if it's specific, and it is in fact specific, but if it's specific and what it covers is everything. It does not cover everything. For instance, Judge Barron, it would not cover the non-repayment of the loan. It covers intentional acts of the insured who has the right to go to the insurance company, because he's the insured, and take out a loan. Thank you. Thank you, Your Honor. Good morning, Your Honor. May it please the Court, my name is John Conley. I represent the Defendant Amplified Guild of Beinhacker, along with my colleague, Bob Ferguson. We are before you on a summary judgment motion that had several components to it, but the component that's being appealed today is the ruling by Judge Woodlock in favor of the motion for summary judgment that we filed on the non-recourse provision in the documents. And the non-recourse provision that is in the specialty loan document is one that is oftentimes seen in transactions like this or others where there's a series of documents that are put together and set forth a loan obligation, a collateral for the loan obligation, payment requirements for the loan obligation. And in instances, they contain non-recourse provisions where notwithstanding a promissory note that is signed or something else, it is agreed to by the parties that there will be no recourse against one of the parties for failure to abide by one of the obligations to pay back the loan. That is what happened here. The non-recourse provision that is set forth in this transaction is one that is commonly found and has been found by the courts to be not inconsistent, but actually one that is agreed to by the parties in the sense that they're saying that we are making this loan, we are providing collateral for the loan, and we are agreeing that notwithstanding what any other loan documents say, such as a promissory note, that we'll be looking to the collateral as a resource for the loan. Is there a reason for the non-contravention agreement on your theory? Because I'm assuming you're treating it as a loan document, the non-contravention agreement. We are, Your Honor. So if it is a loan document, what was the point of it? Well, it's a good question. It's one that we quite don't understand either in the sense that... Your answer is you have no idea. Correct. That it was put forward as a menu of documents that were required to be signed by the lender to go forward with this transaction. It was not one that we asked for or understood where the basis for it was. But what we were clear is what we were bargaining for was a non-recourse provision that was set forth in the loan. And that said, that notwithstanding any other documents, such as a non-contravention or anything else, is that there would not be recourse against my client. And that's what was the preeminent bargain for point that we looked for here. And the way it's worded and the way that we made sure that it said, notwithstanding anything else, that there is not recourse. And so there's no tension between the two because the transaction was such that it was agreed to by the parties that the collateral would be the main source for the look to if there had been a default or breach of the contract. That's what was set forth. That's what this agreement was. And that is, in fact, what their recourse with respect to Mr. Beinhart was, was with respect to that collateral as they agreed to in the very beginning. But the problem with that is that the law directs us to construe contracts so that we give force to every provision or every agreement in a series of agreements. And under your interpretation, the non-contravention agreement is virtually a nullity. It is not a nullity in the sense that it has other clauses and provisions in it that apply to other circumstances and other parties to the agreement. But with respect to Mr. Beinhart, due to the language that was specifically bargained for and agreed to in the specialty loan agreement, it is not a nullity because what they bargained for, which is to have the collateral as an access for any default, is still in place under the non-contravention agreement and also under the loan agreement. See, as a good lawyer, you say that. But what your brother says is, no, that's not what we bargained for. We bargained for protection against some intentional interference by Beinhart with the deal that we had made. And that's why we had the non-contravention. We're protecting him against a default on the policy or someone coming after him on the premiums or something like that. And that's the way we ought to reconcile these two. And I'm at a loss to figure out which agreement we ought to give privacy to. I understand what you're saying. I understand what Mr. Farrell is saying. Could we do with this? I'm sorry, you were asked a question. No, this is fine. I'll tackle them both. So go ahead. I'd probably be happy to have a different question. Could we reconcile them in this way? Number one, there is tension because under the specialty loan agreement, I keep forgetting his name, Beinhart would not be subject to any recourse at all. But what you're saying here is that under the non-contravention agreement, he would not be subject to any recourse beyond the extent of the value of the collateral. So there is tension between them as I understand it. And my question based on that understanding is, shouldn't we construe the non-contravention agreement as being a narrower agreement with respect to specifically, as it says in here, the provisions of the agreement itself, whereas there is a general non-recourse agreement that still exists for any liability that might be claimed, which was not a violation of the non-contravention agreement. And therefore, we would say, we could reasonably say that the provision of non-contravention that Beinhart would indemnify was simply a specific provision, which was an exception to the general provision in the specialty loan agreement of no indemnification. Somewhat. And let me see if I can tackle it. The non-contravention language that is set forth there is this, is that we will not take any action to cause an event of default under the specialty loan agreement. It was found by the court that an event of default happened under the specialty loan agreement, which caused the policy to lapse. But under the loan agreement, there could be a default not caused by actions of Beinhart, right? There could be. There could be actions caused by other persons. And as to them, there's no question, Beinhart is not subject to recourse. With respect to those persons, but what they're looking for here is to say, with respect to actions that Beinhart took, and those actions to cause the default, are governed, as we say, by the loan agreement, which says notwithstanding anything else that we agreed to, that just like in any circumstance that if you have a promissory note that you signed to pay and you didn't pay, but your loan agreement has a non-recourse provision that says that you will not be held liable for that failure to pay for anything beyond what the collateral is, then that is what is enforceable. And that is, in fact, the exact situation that we have here. But as to Beinhart, then, the non-contravention agreement is a nullity. Yeah, meaningless. It is a nullity by virtue of the other loan documents, which say in them specifically that there is a, notwithstanding what anything else says, this is what governs. And that is what a non-recourse situation is. Yeah, it is, but the classic non-recourse situation does not have a flat contradiction written into a document signed on the very same day referring to the very same transaction. And if we follow your position, then we have got to say as to Beinhart, this is absolutely meaningless. He can contravene the non-contravention agreement to a fairly well, and nobody can touch him. And, Your Honor, the reason why that is is because in the loan agreement it says, notwithstanding what anything else says, there would be no personal liability. I realize that, but don't we have to have a further reason under a rule as in Massachusetts that one is supposed to construe the documents together in as harmoniously as possible? Don't we have to make a try beyond simply going back to the specialty loan agreement and said, hey, it says notwithstanding? And we do, Your Honor, and that is what our position and what Judge Woodlock found was that there is the congruence to both because the overall agreement was that they, with respect to Mr. Beinhart, that they would be looking for the collateral was the relief, so to speak, or the manner in which any damages would flow from with respect to any breach by Mr. Beinhart of the non-contravention agreement or any other agreement. And it says notwithstanding. You could have notwithstanding clauses that would, whatever another agreement says, whatever other functions it does, we want to make clear, one of the functions of that other document cannot be to allow recourse given the non-recourse provision. And that makes sense. That's like a partial repeal, effectively. It limits the scope of a document. And if the language was general, you might think that just clarifies, right? It's easier to write it that way. The problem here is on your reading, the other document, it just doesn't make any sense why any of the words in it exist at all because all of the words are in tension with the non-recourse provision. So there's just literally no reason why it would have been written and signed. The only thing I hear you saying is, who knows? He seemed to want it. We wanted a deal. If they'd like to sign it, let's all sign. And that's about the size of it, right? In essence, yes. Okay. So one possible dimension in which they seem to be suggesting maybe there's a gap is that non-payment doesn't trigger the non-contravention agreement. Do you think that's a plausible reading of the non-contravention agreement? I do not. And I point you to the language that says, an event of default under the specialty. But the prior language that proceeds, all prior language proceeds, but the language that starts it off, is an action caused by, is that right? Have not and will not contravene or take any action that will cause an event of default. Well, does non- is it possible that non-payment is not causing it, where the action, the act of taking out of a loan is reflective of a distinction along the lines they're suggesting, that this was meant to capture intentional conduct? Well, if that was the case, it's not what it says, and it doesn't discuss that intentional conduct is differentiated from any other non-intentional or other type of conduct. It doesn't say that here. To go back to a question that was asked of my opposing counsel earlier, these were agreements that were drafted by the lender and certainly have the opportunity of intention and the desire to parse out or make something, an intentional act different, was within their ability to do and didn't happen here. And that would have to be read into that provision. And certainly it would not be able to be decided, it could not be read in, it wasn't read in by Judge Woodlock, it would not be able to be read in, in our view, by this court. If there was a remand, it would need to be four findings with respect to drafting and intent and things like that. It's not here. And certainly that was always in front of Judge Woodlock, just as it is with you, and he found that it was not there and it was not something that he read into the agreement. Let me follow up on Judge Barron's question. You could have a non-payment in this case if the sub-trust or the sub-trustee took all the money he could lay his hands on and, you know, went to the South Seas with it. In that case, there's no question under the specialty loan agreement that there could be no recourse against Beinhacker. So the non-recourse provision in the specialty loan agreement still has a use. Contrary to that scenario, if, in fact, there is no money because of an act of Beinhacker in contravention of the non-contravention, in violation of the non-contravention agreement, then there could be recourse because it says so specifically in the non-contravention agreement. That gives a use and meaning to each agreement, and it is a way of resolving the conflict. Why isn't that, under the Massachusetts rule, the appropriate way to construe these two documents? Because, Justice Souter, if you look at the Massachusetts cases and you look at the Sylvia case and others, talking about non-recourse provisions in loan documents, which is what we have here, you have an inherent conflict in that under a promissory note you're agreeing to pay and then you don't pay in the loan agreement with this non-recourse language that was agreed to by the lender in the first instance, says that notwithstanding that, which is what the language is in here, notwithstanding not paying under the promissory note, you cannot, your recourse is to the collateral and not to anything personally of the person who signed the note. And it's construing the documents as they are stated and as they are read, and when you have, that's what we have here with the notwithstanding, and you read them together, I'm reading them together, Judge Woodlock read them together, and so found that as you do read them together, the documents say that there isn't recourse, notwithstanding, because it specifically says that, what might be in the non-contravention agreement. I see that my time is up. If there are no further questions, I will sit down. Thank you. Thank you. You reserved two minutes. If I might, I'd like to make two points. The one point is that Judge Woodlock found that the defendant's conduct and their actions in this matter was at least gross negligence, if not fundamental fraud. And that brings us to even if this Court were to accept my esteemed colleague's arguments that they should be read together and it becomes a nullity, the non-contravention agreement was drafted and signed for no reason because it does nothing, and that's how this Court should interpret it. Where you have gross negligence, it's a matter of public policy. If we preclude the enforcement of such a waiver, here they acted with the specific intent to take a loan for the added purpose of not only getting the money, $200,000, but also causing a lapse. Did you make that argument to the District Court? Yes, Your Honor. And did Judge Woodlock pass on it or recall anything to that effect in his opinion? Judge Woodlock, in his opinion, Judge Sala, cited the deposition testimony with respect to the co-defendant, Mr. Phillips, and his conduct. Yeah, I know he made a ruling on Phillips, but there's nothing in Judge Woodlock's opinion, and I'm going beyond that at this point, which indicates to me that you made this argument as a means of enforcing this contract provision. I understand the judge's question now. No, I did not make the argument that gross negligence would be an exception to the enforceability of a waiver provision. But then you can't make it here if you didn't make it in the District Court. There was no written argument to that effect, Your Honor. Then it would be just as applicable to the nonrecourse provision, wouldn't it? Well, the gross negligence argument, I think, is a matter of law, and whether or not it's made is because it's a matter of public policy. So whether or not I made it at the District Court really does not relieve the actor who acted in the means of gross negligence, and, in fact, the District Court found gross negligence.